UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA L. RILEY o/b/o
ROBERT H. WALKER, deceased,

   Plaintiff,

v.                Case No. 1:05-CV-801
                   Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
               /

## REPORT AND RECOMMENDATION

   Plaintiff, Jenna L. Riley, on behalf of her deceased husband, Robert H. Walker ("claimant"), brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). In her decision, the Commissioner granted, in part, the claimant's application for disability insurance benefits (DIB). For the reasons stated below, the court recommends that the ALJ's decision be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

   Claimant was born on June 6, 1949, had an eleventh grade education and testified that he passed the GED test while in the military (AR 18).[1] He had previous employment as an electrician and mechanic (AR 18). Claimant died on March 9, 2002 (AR 584).

   The present appeal involves claimant's application for DIB filed on August 19, 1997, in which he alleged a disability as of December 1, 1988 (AR 18). In order to address the issues raised in the present appeal, it is necessary to review the procedural history leading up to the 1997

---

[1] Citations to the administrative record will be referenced as (AR "page #").

application.

Claimant filed a prior application for DIB in 1985 (AR 18, 584). He was found to be disabled as of September 5, 1984 due to fractures of a limb sustained in a motorcycle accident (AR 18-19, 584). When claimant's eligibility for payment ceased in November 1988, he requested reconsideration of the termination decision (AR 584). On February 23, 1989, claimant was notified that his request for reconsideration could not be approved, that disability ceased in August 1988 and that benefit payments would cease as of October 31, 1988 (AR 584). He did not appeal this decision to terminate benefits (AR 18).

Claimant filed the present application in 1997. In an October 25, 1999 decision, Administrative Law Judge (ALJ) Paula M. Zera reviewed the record and determined that the evidence did not establish good cause to reopen and revise the prior determination (AR 18). Based upon this determination, ALJ Zera found that the doctrine of res judicata applied to the time period prior to October 31, 1988 and dismissed claimant's request for a hearing with respect to the termination of benefits (AR 18). ALJ Zera determined that the period at issue in claimant's 1997 application commenced on December 31, 1988 (the alleged onset date) and terminated on December 31, 1993 (when claimant last met the DIB insured status requirement) (AR 18). ALJ Zera found that claimant was not under a disability at any time through December 31, 1993 (AR 27).

Claimant filed a subsequent application for DIB and Supplemental Security Income (SSI) on October 25, 2001 (AR 584). These applications were approved based upon a determination that claimant was disabled commencing September 10, 2001 due to malignant neoplasm of the pancreas (AR 584).

Claimant also appealed ALJ Zera's 1999 decision to the federal district court, which resulted in a posthumously published decision, *Walker v. Barnhart*, 258 F. Supp. 693 (E.D. Mich. 2003). In *Walker*, the court affirmed ALJ Zera's decision in part, but remanded the matter because the hypothetical question posed to the vocational expert did not adequately take into account the non-exertional limitations caused by claimant's depressive disorder. *Walker*, 258 F. Supp. 2d at 698-702.

The case was assigned to ALJ Douglas W. Johnson on remand. ALJ Johnson held a hearing during which plaintiff testified.[2] Plaintiff's counsel asked that the ALJ re-open the Commissioner's 1988 decision terminating benefits, because claimant "was despondent from his [first] wife's suicide and the subsequent grief counseling during this period" (AR 657). ALJ Johnson denied plaintiff's request to re-open claimant's earlier application for benefits because the application was not filed within the required time period to re-open the prior decision pursuant to 20 C.F.R. § 404.988 (i.e., within 12 months of the notice of the initial determination "for any reason," within four years of the notice for "good cause," and "at any time" if it was "obtained by fraud or similar fault") (AR 585). In this regard, the ALJ found that good cause did not exist for re-opening the prior application pursuant to 20 C.F.R. § 404.989, no new and material evidence had been furnished, it has not been established that there is error on the face of the evidence on which the prior decision was based, and there was no reason not to apply the doctrine of res judicata to the prior decision pursuant to 20 C.F.R. § 404.957(c) (AR 585). Accordingly, ALJ Johnson's decision addressed only that period commencing on February 24, 1989 (AR 585). He issued a partially favorable decision dated February 26, 2004 (AR 584-90). ALJ Johnson's decision, which was later

---

[2] Plaintiff, Jenna L. Riley, is identified at the January 7, 2004 hearing as Tamie Sue Walker Riley (AR 822).

approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

4

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Following the five steps, ALJ Johnson initially found that claimant worked after the alleged onset date of disability and performed substantial gainful activity from February 1996 through May 1996 (AR 589). Second, the ALJ found that he suffered from the severe impairments of status post fractures of the right wrist, left ankle, left knee, and left femur, and a major depressive disorder (AR 589). At the third step, the ALJ found that claimant did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 589). The ALJ decided at the fourth step that claimant had the residual functional capacity (RFC) to:

> perform work except for lifting and carrying more than 20 pounds occasionally and ten pounds frequently, standing and/or walking more than six hours in an eight-hour workday, pushing and pulling constantly, being exposed to extremes of temperature and humidity, having frequent or sustained interaction with co-workers or the general public, and sustaining concentration, persistence, and pace for even simple, routine tasks.

(AR 589). The ALJ concluded that claimant was unable to perform his past relevant work (AR 589). The ALJ also found that claimant's allegations regarding his limitations were credible (AR 589).

At the fifth step, the ALJ determined that based upon claimant's RFC, and vocational factors, there are no jobs existing in significant numbers that he could perform (AR 589). The ALJ found that claimant was under a disability as defined by the Social Security Act since February 24, 1989 and was entitled to a period of disability commencing on that date (AR 589). Claimant's eligibility for payment ceased February 28, 2002, the month before the month of his death (AR 590).

6

### III. ANALYSIS

Plaintiff raises two issues on appeal:

### A. Is the RFC of light work not supported by substantial evidence?

First, plaintiff contends that ALJ Johnson's determination that claimant could perform light work prior to February 24, 1989 is not supported by substantial evidence. Plaintiff states:

> This case is unusual from the standpoint that during a nearly 18 year period the partially favorable decision finds that [claimant] was not disabled during a brief six month period from August, 1988 through February 23, 1989. During the brief six month window the ALJ found that [claimant] could perform light work.
>
> In other words, [claimant] could not perform any work at all from September 5, 1984 through August, 1988; then he could perform a range of light work for a six month time period from August, 1988 through February 23, 1989 and then was found disabled again and could not perform any work from February 24, 1989 until he passed away on March 9, 2002.

Plaintiff's Brief at 4-5. Plaintiff points out in her reply brief that, "[a]s this Court is aware, this issue is critical because of the six month period in which the ALJ found that [claimant] was not disabled his Estate was denied eight years of retroactive benefits." Plaintiff's Reply Brief at 2. Defendant points out that "[t]he Agency's 1988 decision and most of the evidence relating to it was never made part of the administrative record, and is not properly before this Court." Defendant's Brief at 10.

Plaintiff's arguments are not persuasive. Plaintiff bears the burden of demonstrating that claimant was disabled. *See Jones*, 336 F.3d at 474; 20 C.F.R. § 404.1505. The court cannot simply infer that claimant was disabled continuously from September 5, 1984 through March 9, 2002. On the contrary, the record reflects that claimant's benefits were terminated as of August

1988 and that he engaged in substantial gainful activity in 1996.[3]  Accordingly, this claim should be denied.

> **B. Does substantial evidence support the findings of the Commissioner when the ALJ did not evaluate this claim under Social Security Ruling (SSR) 91-5p?**

Next, plaintiff contends that the ALJ should have re-opened the Commissioner's February 23, 1989 decision to terminate claimant's benefits, on the ground that claimant was mentally incapable of contesting that decision.  The court agrees with plaintiff to the extent that the ALJ Johnson failed to adequately address claimant's ability to file a timely appeal of the decision to terminate his benefits.

"[G]enerally, a federal court is without jurisdiction to review the [Commissioner's] decision to deny reopening of a claimant's case."  *Willis v. Secretary, Health and Human Services*, 802 F.2d 870, 873 (6th Cir. 1986), *citing Califano v. Sanders*, 430 U.S. 99, 107-08 (1977).  An exception to this rule exists when the claimant presents a colorable constitutional claim.  *Id.*  "[A]bsent a colorable constitutional claim, federal courts are without jurisdiction to review the [Commissioner's] denial of benefits on the basis of *res judicata*."  *Parker v. Califano*, 644 F.2d 1199, 1201 (6th Cir. 1981) (citations omitted).  A claimant establishes a colorable constitutional claim for denial of due process when his mental capacity may have prevented him from pursuing his administrative remedies.  *Willis*, 802 F.2d at 873.

The Sixth Circuit explained such a claim in *Parker*, *supra*:

> The claim presented here by Parker alleges, in effect, that it is a denial of due process for a claimant to be precluded from litigating her claim for benefits because

---

[3] Claimant testified that he performed full-time custodial work for about 90 days, earning a little over $5,000 (AR 513-14).

>of a failure to proceed in a timely fashion from one administrative stage to the next when the claimant did not receive meaningful notice and the opportunity to be heard. The alleged defect in notification does not concern the content of the standard notices, which were admittedly mailed and received, but relates to the ability of the claimant to understand and act upon them. Parker's contention is that, because she did not have the mental ability to understand and comply with the notice of further administrative procedures, she did not receive meaningful notice and an opportunity to be heard.
>
>It is axiomatic that Section 205(b) of the Social Security Act, 42 U.S.C. § 405(b), and due process require that a claimant receive meaningful notice and an opportunity to be heard before her claim for disability benefits may be denied. A substantial question exists in this case whether Parker has received this fundamental guarantee. Medical evidence submitted with a later application indicates some degree of mental illness that predates the filing of her initial application. The complaint also contains allegations of mental disability. Further, the district court's remand of this case to the Secretary indicates doubts that the court had concerning Parker's mental condition at the time she initially failed to pursue her administrative remedies. We think Parker presents a colorable argument that she failed to understand and act upon the notice she received because of her mental condition, and that a denial of benefits based upon this failure is a denial of due process. <u>This type of contention seems peculiarly apropos in the context of Social Security disability benefit proceedings in which, as here, the very disability that forms all or part of the basis for which the claimant seeks benefits may deprive her of the ability to understand or act upon notice of available administrative procedures.</u> Thus, we conclude that Parker had presented a colorable constitutional claim and that therefore the district court was correct when it exercised jurisdiction by remanding to the Secretary.

*Parker*, 644 F.2d at 1203 (emphasis added).

Plaintiff contends that claimant has met this burden, stating that "[a] colorable Due Process claim is already present in the ALJ's decision due to the fact that he specifically made a finding that [claimant] lacked the mental capacity to work from February 1989 until his untimely death." Plaintiff's Reply Brief at 3. Plaintiff also contends that the ALJ failed to follow the requirements of SSR 91-5p, which sets forth a procedure for analyzing such claims. Specifically, although the ALJ Johnson found that claimant's mental impairments precluded him from performing the basic mental demands of work as of February 1989, he failed to articulate why SSR 91-5p does

9

or does not apply. Plaintiff's Reply Brief at 2-3.

The record reflects that plaintiff raised the issue of claimant's mental capacity to appeal the 1989 termination notice at the administrative hearing before ALJ Johnson. Counsel submitted a "pre-hearing memorandum for closed period" which requested a re-opening of the denial of benefits in 1988, on the grounds that claimant was despondent from his wife's suicide prior to filing the application for benefits in 1997 (AR 654-57). Plaintiff testified that claimant's first wife committed suicide in July 1988 and that claimant was terminated from his employment in October 1988 (AR 830). Near the conclusion of the hearing, plaintiff's counsel stated that this factual scenario raised a "classic" SSR 91-5p issue (AR 848-49). Counsel argued that claimant was "going through a lot of emotional problems" and did not "have the emotional wherewithal to pursue his appeal until he [met] his new wife" (AR 849).

As previously discussed, ALJ Johnson concluded that there was no good reason to re-open the prior application and there was no reason not to apply the doctrine of res judicata to the 1989 decision (AR 585) (citing §§ 404.957(c) and 404.989). Despite this ruling, ALJ Johnson found that as of February 24, 1989 (the day after the notice of termination) claimant suffered from a severe impairment of a major depressive disorder, and that claimant could not perform work that involved "having frequent or sustained interaction with co-workers or the general public, and sustaining concentration, persistence, and pace for even simple, routine tasks" (AR 589). It appears to the court that if claimant did not have the mental capacity to perform "even simple, routine tasks" in February 1989, then it is certainly arguable that his diminished mental capacity may have prevented him from pursuing his administrative remedies on that date. *See Willis*, 802 F.2d at 873. Given this history, it appears to the court that ALJ Johnson should have addressed plaintiff's claim that he did not have

10

sufficient mental capacity to appeal the decision terminating benefits.

The purpose of SSR 91-5p is to clarify the agency's policy "on establishing good cause for missing the deadline to request review," and was "to avoid the improper application of res judicata or administrative finality when the evidence establishes that a claimant lacked the mental capacity to understand the procedures for requesting review."   SSR 91-5p.[4]

SSR 91-5p is based in part on the requirements set forth in 20 C.F.R. § 404.911(a), which states that:

> In determining whether you have shown that you had good cause for missing a deadline to request review we consider
>
> (1) what circumstances kept you from making the request on time;
> (2) whether our action misled you;
> (3) whether you did nor did not understand the requirements of the Act resulting from amendments to the Act, other legislation, or court decisions.

*Id.*

This ruling sets forth the agency's policy that a claimant's failure to meet the time limits for requesting a review is not automatic grounds for dismissing the appeal, and that "consideration will be given to a claimant who presents evidence that mental incapacity may have prevented him or her from understanding the review process." SSR 91-5p provides in pertinent part that:

> In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:

---

[4] The court reviewed the text of SSR 91-5p as it appears on the agency's website, www.ssa.gov.

> -- inability to read or write;
> -- lack of facility with the English language;
> -- limited education;
> -- any mental or physical condition which limits the claimant's ability to do things for him/herself.

*Id.*[5]

During the 1999 hearing (which claimant attended), the ALJ elicited testimony from the medical expert, Dr. Jeffrey N. Ander, with respect to claimant's condition before his last insured date of December 31, 1993. Dr. Ander, a clinical psychologist, stated that claimant had an episode of an adjustment disorder with depressed mood from August 1988 through February 1990 (AR 555-56). Dr. Ander testified that this disorder resulted in: a slight degree of restriction of activities of daily living; slight to moderate difficulties in maintaining social functioning; deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner that occurred "[b]etween seldom and often;" and no document episodes of deterioration or decompensation of work (AR 557-58). This evidence did not establish that plaintiff was so limited as to render him incapable of pursuing an administrative appeal of the termination notice.

Claimant did not specifically testify with respect to his mental condition in 1988 and 1989. He testified that he started seeing a counselor, Terry Cally, after his first wife's suicide:

> I actually met Terry Cally at a place called Elly's Place here in Lansing. Because of my wife's suicide, I was taking my two daughters to this place where they specialize in tragic deaths for families that have, you know, children. And Terry Cally happened to be the head of the group that I was in and as we were talking and stuff over a period of time, they were actually evaluating me and suggested that I seek therapy.

---

[5] The court notes that at least one panel of the Sixth Circuit engrafted an additional factor into the SSR 91-5p analysis. In *Anderson v. Commissioner of Social Security*, No. 05-6540, 2006 WL 2348501 (6th Cir. Aug. 11, 2006), the court observed that under SSR 91-5p, "a colorable mental incapacity claim is established only when the fact of mental incapacity is coupled with a showing of lack of anyone legally responsible for prosecuting the claim." *Anderson*, 2006 WL 2348501 at *2.

(AR 538).

Claimant's daughter, Kimberly Wood, testified regarding his mental condition from November 1988 through December 31, 1993. Ms. Wood testified that claimant "was very depressed and his patience very thin," "[h]e cried a lot," and "he was, a totally different person" (AR 547). Claimant told Ms. Wood that he was not a person anymore, "he was half a man, if at all" (AR 548).

Claimant's representative, Milton Utter, did not introduce any additional medical records of his condition prior to the last insured date of December 31, 1993:

> ALJ: And, Mr. Utter, as far as you're aware, is there anything else that we're awaiting receipt of?
> Atty: I don't believe so, Your Honor.
> ALJ: So as far as you're aware, we do have a complete record at this time --
> Atty: Yes.
> ALJ: -- particularly with respect to any information regarding Mr. Walker's condition on before his date last insured?
> Atty: I think we have everything --
> ALJ: All right.
> Atty: That's available.

(AR 509-10).

On appeal, the federal district court summarized plaintiff's mental condition from 1988 through 1990 as follows:

> In 1988, Plaintiff sought treatment from the Genessee Psychiatric Center ("GPC") after his first wife committed suicide. He was diagnosed with major depressive disorder, but was not prescribed any medication. He went to GPC on four other occasions through February, 1990, but did not seek psychological treatment again until 1996, over two years after the expiration of his insured status. At that time, Plaintiff was diagnosed with major depression.
>
> \*   \*   \*
>
> At the administrative hearing, the ME testified that Plaintiff had an episode of adjustment disorder with depressed mood from August, 1988 to February, 1990. According to the ME, this disorder would have only slightly restricted Plaintiff's activities of daily living, but could have had a more significant impact on his social

13

>   functioning and ability to concentrate.

*Walker*, 258 F.Supp.2d at 697-98.

While the court concluded that ALJ Zera did not re-open the prior application, it did not address the propriety of her decision:

>   Here, the ALJ found that Plaintiff was not disabled under step five of the disability analysis, because he could perform other work in the national economy. Plaintiff objects to this finding on the following three grounds. First, Plaintiff argues that the magistrate improperly concluded that the ALJ did not constructively reopen Plaintiff's 1985 application for DIB. Essentially, Plaintiff takes issue with the ALJ's initial determination that res judicata barred the reopening of the 1985 claim, and subsequent consideration of various pieces of medical evidence from the record relating to that claim. Specifically, Plaintiff contends that the ALJ improperly discussed Plaintiff's RFC from the first claim to rationalize the RFC for the current claim.
>
>   "[W]here a claim has been reconsidered on the merits, it is properly treated as having been reopened as a matter of administrative discretion." *King v. Chater*, 90 F.3d 323, 325 (8th Cir.1996). This is known as a de facto or constructive reopening. Id. However, "[m]ere consideration of evidence from an earlier application is not considered a reopening of an earlier claim" *Id.*
>
>   The Court adopts the magistrate's extensive and thorough analysis of this issue, and finds that the ALJ did not reopen Plaintiff's 1985 application for DIB simply by discussing and considering medical evidence from that claim. In so holding, the Court reiterates the magistrate's conclusion that at no time did the ALJ reconsider the merits of Plaintiff's earlier claim by seeking to determine whether Plaintiff was actually disabled during the relevant time period for that claim. Rather, the ALJ specifically noted that res judicata barred her from reviewing Plaintiff's 1985 claim. Therefore, she considered only Plaintiff's disability status as to the unadjudicated time between December 1, 1988 and December 31, 1993, when Plaintiff's disability insurance expired.

*Id.* at 698-699. The court remanded the matter to the Commissioner for further fact finding with respect to claimant's mental condition. *Id.* at 701-02.

At the second hearing before ALJ Johnson, counsel supplemented the record with plaintiff's testimony that claimant "did not have the mental capacity to realize he was supposed to

14

appeal" the 1989 termination notice (AR 831). It is unclear how ALJ Johnson viewed plaintiff's testimony regarding claimant's mental condition in 1988 and 1989.[6]

Based on this record, the court concludes that ALJ Johnson should have performed a more substantive discussion of claimant's mental capacity to appeal the 1989 termination decision. Plaintiff's counsel specifically raised SSR 95-1p as an issue in the case. Although ALJ Johnson found that claimant had only a limited education, and was disabled by both physical and mental impairments the day after the termination notice (February 24, 1989), he did not discuss these circumstances with respect to claimant's failure to appeal the termination notice. Reading ALJ Johnson's decision as a whole, he implicitly found claimant capable of filing an appeal on February 24, 1989. While this finding is not necessarily inconsistent with the determination that plaintiff was disabled as of that date, the ALJ's decision needs some additional explanation. The court is also somewhat perplexed by the ALJ's disability determination in light of Dr. Ander's testimony that claimant's mental condition was not particularly serious from August 1988 through February 1990.

It is unnecessary for the ALJ to address every piece of medical evidence. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Nevertheless, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, ALJ Johnson has failed to articulate his analysis of the evidence to allow this court to trace his reasoning with respect to the constitutional issue. The ALJ found no good cause to re-open the prior application.

---

[6] The court notes that plaintiff had no personal knowledge of the facts surrounding the 1989 termination notice or of claimant's mental condition at that time. She had only known claimant since 1996 (AR 829-31).

However, counsel raised a constitutional issue that merited some type of response. A discussion of the factors set forth in SSR 91-5p would have been helpful to the court, especially in light of the ALJ's determination that claimant was disabled, had a limited education, and suffered from both physical and mental impairments when he received the termination of benefits notice in February 1989.

**IV.    Recommendation**

Accordingly, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. 405(g). On remand, the ALJ should address plaintiff's constitutional claim pursuant to SSR 91-5p.


Dated:  January 8, 2007                          /s/ Hugh W. Brenneman, Jr.
                                                  Hugh W. Brenneman, Jr.
                                                  United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).